**SO ORDERED.**

**SIGNED this 31st day of August, 2021.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-41545-11 |
| FENCEPOST PRODUCTIONS, INC., *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT
AND CONSOLIDATED CHAPTER 11 PLANS OF REORGANIZATION**

THIS MATTER comes on for hearing this 25th day of August, 2021 on confirmation of

Debtors' First Amended Joint and Consolidated Chapter 11 Plans of Reorganization. The parties

who appeared at the hearing and counsel who appeared on their behalf are reflected in the

transcript of the hearing. Unless otherwise indicated in this Order, capitalized terms as used

herein shall have the meaning given to those terms in the Plan (as defined below). The Plan and

other materials having been transmitted as directed by the Court to creditors, the United States

Trustee, and other parties in interest and the Court, having heard statements of counsel and

considered the record and evidence supporting confirmation of the Plan,

THE COURT FINDS as follows:

## **Procedural History**

1.     Debtors Fencepost Productions, Inc., NPB Company, Inc., and Old Dominion Apparel Corporation commenced these Chapter 11 proceedings (the "Chapter 11 Cases") with the filing of their Voluntary Petitions on December 18, 2019 (the "Filing Date"). The Chapter 11 Cases are jointly administered but the cases are not consolidated and Debtors remain separate albeit affiliated entities in a common and integrated business enterprise for the production and distribution of outdoor apparel.

2.     Debtors' First Amended Joint and Consolidated Chapter 11 Plans of Reorganization (the "Plan") was filed on November 11, 2020 (Doc #303). Debtors' Amended Joint and Consolidated Disclosure Statement (the "Disclosure Statement") was filed on February 12, 2021 (Doc #371). The Court entered its Order Approving Debtors' Amended Joint and Consolidated Disclosure Statement on April 12, 2021 (Doc #403).

3.     Pursuant to the Order and Combined Notice to Creditors and Parties in Interest in a Chapter 11 Case (Doc #305), the Court authorized balloting of the Plan and established a deadline for voting and for the subsequent filing of a ballot summary. Debtors duly filed the Ballot Report (Doc #335) summarizing the voting on the Plan.

4.     The Court issued its Notice of Confirmation Hearing on April 12, 2021 (Doc #404), setting the hearing on May 11, 2021. By agreement of the parties in attendance at the May 11 hearing, the Court continued the confirmation hearing to May 26. Since the May 26 hearing, the Court has continued the confirmation hearing in order to enable the parties to resolve any issues and thereby reach full agreement that would facilitate a consensual plan process.

## Classification and Treatment of Classes Under the Plan

5.     Pursuant to 11 U.S.C. §§ 1122(a) and 1123(a)(1), the Plan classifies claims in the following seven classes:

        a.     Class 1 – administrative claims;

        b.    Class 2 – allowed secured claim of Associated Bank;

        c.     Class 3 – allowed secured claim of Core Bank;

        d.    Class 4 – allowed tax priority claims;

        e.     Class 5 – allowed general unsecured claims;

        f.     Class 5A – subordinated allowed general unsecured claims; and

        g.    Class 6 – allowed interests.

6.     The Plan, attached hereto as Exhibit 1, delineates the classes of claims that are not impaired as required by 11 U.S.C. § 1123(a)(2) and provides for the specific treatment of each impaired class as required by 11 U.S.C. § 1123(a)(3). The terms for the treatment of each class in the Plan are incorporated herein except for the treatment of Class 3 which is modified as set forth below.

## Voting

7.     Classes 2, 3, 5, and 5A are non-insider impaired classes entitled to vote on the Plan. Classes 1 and 4 are unimpaired and, therefore, constitute non-voting classes.

8.     The Ballot Report reflects class acceptance of the Plan by Classes 2, 5, 5A,[1] and 6. While Class 3 initially voted against the Plan and filed an objection against the Plan, Core Bank

---

[1] The Court resolved the competing claims of the group of subordinated creditors and AB in its Memorandum Opinion and Order Overruling Debtors' Objections to Proofs of Claim filed by the BMS Group and Granting in Part and Denying in Part Debtors' Omnibus Motion to (A) Disqualify Votes of Subordinated Creditors, (B) Designate Plan Rejection, (C) Invalidate Unsigned Ballots, and (D) Strike Plan/Disclosure Statement Obligation (the "Memorandum

has withdrawn its objection and its ballot for rejecting the Plan.[2] Furthermore, Core Bank represents that it no longer opposes confirmation of the Plan. Therefore, there are no dissenting classes voting against the Plan or objecting to confirmation.

## **Revised Plan Treatment of Class 3**

9.     The Class 3 claimant is a prepetition lender on the basis of two SBA loans secured by real estate (the "Real Estate Loan") and personal property primarily secured by collateral consisting of intellectual property (the "Personal Property Loan"). Specifically, the Real Estate Loan is secured by that certain Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing, dated April 24, 2018, from Old Dominion Apparel Corporation to Core Bank, concerning the real property commonly known as 900 Vista Avenue, Independence, Missouri 64056 (the "Real Estate"). The Personal Property Loan is secured by that certain SBA Security Agreement, dated April 23, 2018, from Debtors to Core Bank, whereby Debtors granted Core Bank a security interest in, among other things, the Core Bank Primary Collateral (as defined in that certain Intercreditor Agreement dated as of April 23, 2018 (the "Intercreditor Agreement") between Core Bank, Associated Bank, N.A. ("Associated") and the Debtors), which includes,

---

Opinion") issued on March 31, 2021 (Doc #396). The Memorandum Opinion upheld the right of AB to receive payments on the subordinated claims and the subordinated creditors were deemed to lack standing to participate in the Plan process. As a result, the Memorandum Opinion invalidated the ballots cast by the group of subordinated creditors against the Plan in Class 5A.

[2] Core Bank filed its Motion for Authority to Withdraw Ballot Rejecting Chapter 11 Plan Pursuant to Bankruptcy Rule 3018(a) and Notice of Withdrawal of Core Bank's Joint Objection to Debtors' First Amended Joint and Consolidated Chapter 11 Plans of Reorganization and Joint and Consolidated Disclosure Statement (Doc #410). The Court granted the foregoing Motion in its Order, dated August 9, 2021 (Doc #416).

among other things, Debtors' intellectual property.[3] The treatment of the Class 3 Secured Claims in Section 4.3 of the Plan is replaced in its entirety by the restated treatment as herein provided. Core Bank will be paid on its Secured Claims as follows:

(a)     The loan balance of $712,982.01 on the Real Estate Loan will be repaid over a period of 120 months commencing with the first monthly payment. The payments shall be amortized over a 25 year term with an interest rate of 3.25%.

(b)     The loan balance of $903,516.92 on the Personal Property Loan will be repaid as follows:

> (i)     the sum of $100,000 will be repaid over a period of 120 months commencing with the first monthly payment. The payments shall be amortized over a 25 year term with an interest rate of 3.25%.
>
> (ii)    the residual sum of $803,516.92 will be paid over a period of 120 months commencing with the first monthly payment. The payments shall be amortized over a 25-year term.

The Class 3 Claimant will receive amortized payments in equal monthly installments commencing on the Effective Date as defined in the Plan. Class 3 will retain its first priority lien on the Real Estate and the Core Bank Primary Collateral (collectively, the "Core Bank Collateral"), which indisputably constitute Core Bank's collateral until payment in full of its

---

[3] Associated retains and nothing herein shall impair (i) Associated's first priority Liens and rights under Section 4.2, Section 4.5, or Section 4.6 of the Plan, (ii) Associated's first priority Liens and rights under the "Associated Settlement Document" defined in Section 4.2 of the Plan, and (iii) Associated's first priority Liens on and rights regarding the Associated Collateral (as defined in Section 4.2 of the Plan) and the Associated Primary Collateral (as defined in the Intercreditor Agreement), all of which Liens and rights Associated shall retain following entry of the Confirmation Order and the Effective Date and are legal, valid, enforceable, and non-avoidable.

Secured Claims. Debtors will maintain the Core Bank Collateral in good condition (normal wear and tear excepted) and will (i) timely pay all taxes, judgments, liens, and/or charges of any kind levied or assessed against the collateral; (ii) maintain adequate coverage with Core Bank as loss payee on the Core Bank Collateral to insure recovery of the full market value in the event of damage or loss; and (iii) permit inspection of the Core Bank Collateral by Core Bank at such times as the parties mutually agree. Notwithstanding anything herein to the contrary, Class 3 will execute and record releases of any and all junior liens on personal property of Debtors within ten days of entry of the Confirmation Order.

## Evidence in Support of Plan Confirmation

10. The Court takes judicial notice of the record in this case including the Plan, Disclosure Statement, Ballot Report, and the withdrawal by Core Bank of its plan objection and ballot rejecting the Plan.

11. Debtors presented the testimony of Debtors' representative, Chief Executive Officer Matt Gray, to establish compliance with the standards for confirmation under Section 1129 of the Bankruptcy Code as follows:

    a. the Plan complies with all applicable provisions of Title 11;

    b. Debtor as plan proponent has complied with all applicable provisions of Title 11;

    c. the Plan has been proposed in good faith and not by means forbidden by law;

    d. the Plan provides for a distribution to creditors that is greater than they would receive in liquidation; and

        e.    Debtors' revenue generation provides sufficient liquidity to fund payments under the Plan and, therefore, the Plan is feasible.

12.    The Court determines that the Plan satisfies the following applicable standards for confirmation under Section 1129 of the Bankruptcy Code;

        a.    The plan proponents have disclosed the identities of any individuals serving as directors and officers after confirmation of the Plan, the identities of any insiders employed or retained by the reorganized Debtors, and the nature of any compensation for such insiders; and

        b.    The Plan has been accepted by all voting classes in compliance with § 1129(a)(8).

In addition, the uncontroverted record in this case reveals that all other applicable requirements of Section 1129 are satisfied.

13.    No other party presented evidence and nothing in the record of this case or otherwise challenges or contradicts the testimonial evidence presented by Debtors.

14.    Debtors secured sufficient post-financing to support business operations and Debtors have retained financing to fund ongoing business operations after plan confirmation. Debtors adopted cost-cutting measures during the pendency of the Chapter 11 proceeding and successfully overcame pandemic-driven impairments of cash flow and losses in the customer base. Debtors have rebalanced their revenue stream by replacement of customer losses with new, substantial orders for Debtors' merchandise. The foregoing steps taken by Debtors substantiate the feasibility of the Plan.

## Conclusions of Law

15.     In view of the evidence presented and the record in this case, Debtors have satisfied the requirements of Section 1129 of the Bankruptcy Code for confirmation of the Plan. As there are only accepting classes and no dissenting classes, the Plan is subject to confirmation under 11 U.S.C. § 1129(a).

THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Plan is confirmed pursuant to 11 U.S.C. § 1129(a). All objections to plan confirmation are withdrawn or otherwise overruled. All rights, claims, and interests of Debtors, creditors, and parties in interest are governed by the terms of the Plan, which terms are specifically approved and incorporated into this Order. This Order shall govern in the event of any inconsistency with the Plan.

2.      Debtor is authorized to take all actions reasonably necessary to fulfill the terms of the Plan and this Confirmation Order and otherwise effectuate and consummate the Plan.

3.      For the avoidance of doubt, the treatment of the Class 3 claims is governed by the terms set forth in this Order.

4.      This Court will retain ongoing jurisdiction as provided in Section 8.1 of the Plan.

5.      Bankruptcy Rule 3020(e) shall not govern this Order and no stay shall apply to the effectiveness of this Order upon entry. This Confirmation Order shall take effect immediately upon entry.

SUBMITTED BY:

McDOWELL, RICE, SMITH & BUCHANAN

By: _/s/ Jonathan A. Margolies_

     Jonathan A. Margolies      MO #30770
                                 KS Fed #70693

605 West 47th Street, Suite 350
Kansas City, MO 64112
816/753-5400 | Fax: 816/753-9996
jmargolies@mcdowellrice.com
ATTORNEYS FOR DEBTORS


APPROVED BY:

KATTEN MUCHIN ROSENMAN LLP

By: _/s/ Paul T. Musser_

     Paul T. Musser (admitted pro hac vice)
                          IL #6304946

525 West Monroe Street
Chicago, IL 60661
312/902-5200 | Fax: 312/902-1061
paul.musser@katten.com
ATTORNEYS FOR ASSOCIATED BANK, N.A.


CHUHAK & TECSON, P.C.

By: _/s/ Edmond M. Burke_

     Edmond M. Burke (admitted pro hac vice)
                          IL #6276406

30 South Wacker Drive, Suite 2600
Chicago, IL 60606
312/855-4352 | Fax: 312/444-9027
eburke@chuhak.com

and

MERRICK, BAKER & STRAUSS, P.C.

By: */s/ Bruce E. Strauss*
    Bruce E. Strauss       KS #70034

1044 Main Street, Suite 500
Kansas City, MO 64105
816/221-8855 | Fax: 816/221-7886
bruces@merrickbakerstrauss.com
ATTORNEYS FOR CORE BANK

OFFICE OF THE UNITED STATES TRUSTEE

By: */s/ Christopher T. Borniger*
    Christopher T. Borniger

U.S Department of Justice
301 North Main Street, Suite 1150
Wichita, KS 67202
316/269-6216 | Fax: 316/269-6182
christopher.t.borniger@usdoj.gov

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

IN RE:                                      )
                                            )
FENCEPOST PRODUCTIONS, INC., *et al.*,      )     Case No: 19-41545-11
                                            )     Chapter 11
                                            )     Jointly Administered
                        Debtors.            )

## DEBTORS' FIRST AMENDED JOINT AND
## CONSOLIDATED CHAPTER 11 PLANS OF REORGANIZATION

**MCDOWELL RICE SMITH & BUCHANAN**

By: /s/ Jonathan A. Margolies
Jonathan A. Margolies          KS/Fed #70693
605 West 47th Street, Suite 350
Kansas City, MO 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
E-mail: jmargolies@mcdowellrice.com
**ATTORNEYS FOR DEBTORS**

**EXHIBIT**
**1**

## INTRODUCTION

Debtors Fencepost Productions, Inc., NPB Company, Inc. and Old Dominion Apparel Corporation, hereby propose the following First Amended Joint and Consolidated Chapter 11 Plans of Reorganization (collectively the "Plan") for the resolution of outstanding claims of creditors and the interests of equityholders in this jointly-administered Chapter 11 proceeding. Reference is made to the Debtors' Joint and Consolidated Disclosure Statement (the "Disclosure Statement") distributed contemporaneously herewith for a discussion of Debtors' history, business, properties, results of operations, risk factors, a summary and analysis of the Plan, and certain related matters. Debtors are the jointly-administered proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code. All creditors and equityholders are encouraged to read the Plan and the Disclosure Statement in their entirety before voting on the Plan.

## ARTICLE 1.
## RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

1.1 **Scope of Definitions; Rules of Construction.** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

1.2 **Rules of Interpretation.** For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or documents being in a

particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (d) the words, "herein", "hereof", "hereunder", "hereto" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.4 **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by the law of the state in which specific real property is located, bankruptcy law as interpreted and articulated by the Kansas Bankruptcy Court and the appellate courts in the Tenth Circuit shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan. Nothing contained in this Section 1.4. is intended to, or shall, affect the substantive law otherwise applicable to the allowance or disallowance of a Claim or Interest or the rights granted to the Debtor.

## ARTICLE 2.
## DEFINITIONS

2.1 **"Administrative Expense Claim"** means a Claim under Code § 503(b) entitled to priority under Code § 507(a)(2) of the Code which has been authorized by the Bankruptcy Court (or is authorized by the Bankruptcy Court subsequent to the filing of the Plan and prior to the Effective Date) for:

(a) any actual and necessary expenses incurred after the Filing Date in connection with operation of Debtor's business or preserving the Estate;

(b) any allowance of compensation and reimbursement of expenses; and

(c) all fees due to the United States Trustee assessed against the Debtor's Estate under 28 U.S.C. § 1930.

2.2 **"Allowed Claim"** means, with regard to any Claim other than an Administrative Expense Claim, a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which on or by the Effective Date, (i) no proof of Claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is listed on the Schedules, other than a Claim that is listed on the Schedules as zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any final Order of the Bankruptcy Court or other applicable bankruptcy law, and, as to which either (i) no objection to its allowance has been filed by any applicable period of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any and all objections to its allowance have been settled or withdrawn or have been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan.

2.3   **"Assets"** means all assets of Debtor including, but not limited to, Cash, all real and personal property owned by Debtor, and all Causes of Action together with all Proceeds.

2.4   **"Ballot"** means each of the ballot forms distributed to holders of Claims or Interests in Classes entitled to vote on acceptance or rejection of the Plan.

2.5   **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United State Code, 11 U.S.C. §§ 101 et.seq., as now in effect or hereafter amended.

2.6   **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Kansas or such other court as may have jurisdiction over the Chapter 11 Case.

2.7   **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

2.8   **"Bar Date"** means the June 1, 2020 deadline by which a proof of claim or amended proof of claim shall have been filed as required by the Order Establishing Bar Date for Filing or Amending Proofs of Claim issued on April 27, 2020.

2.9   **"Business Day"** means any day except for Saturday, Sunday or a "legal holiday" as defined in Rule 9006(a) of the Bankruptcy Rules.

2.10   **"Cash"** means legal tender of the United States of America which may be conveyed by check, wire transfer or other electronic transfer.

2.11   **"Cause of Action"** means any claim, demand, action, cause of action, account, right to legal remedy, right to an equitable remedy, right to payment, defense, suit or

proceeding in law or in equity of Debtor and/or the Estate arising under state or federal law including but not limited to all actions arising under the Bankruptcy Code.

2.12 **"Chapter 11 Case"** means the jointly administered Chapter 11 cases of Fencepost Productions, Inc., NPB Company, Inc. and Old Dominion Apparel Corporation, Case No. 19-41545-11.

2.13 **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

2.14 **"Claimant"** means the holder of a Claim.

2.15 **"Class"** means a category of holders of Claims or Interests described in Article 3 of the Plan.

2.16 **"Collateral"** means any property or interest in the property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

2.17 **"Confirmation"** means entry of an Order by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

2.18 **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order of record in the Chapter 11 Case.

2.19 **"Confirmation Hearing"** means the hearing to consider confirmation of the Plan pursuant to Section 1128 of Bankruptcy Code.

2.20 **"Confirmation Order"** means the Order issued by the Bankruptcy Court confirming the Plan.

2.21 **"Creditor"** means any Entity that holds a Claim against any of the Debtors.

2.22 **"Debtor"** means any one of Fencepost Productions, Inc., NPB Company, Inc., and Old Dominion Apparel Corporation.

2.23 **"Disclosure Statement"** means the written Disclosure Statement that relates to the Plan, as supplemented or modified from time to time and that is prepared and disseminated in accordance with Section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules.

2.24 **"Effective Date"** means the first business day of the month occurring after thirty (30) days following the later of a) the Confirmation Order becomes a Final Order and b) any conditions precedent to implementation of the terms of the Plan have been satisfied or waived.

2.25 **"Entity"** means an entity as defined at Bankruptcy Code § 101(15).

2.26 **"Estate"** means any one of the estates of the Debtors in the Chapter 11 Case created pursuant to § 541 of the Bankruptcy Code.

2.27 **"Filing Date"** means December 18, 2019, the date of the filing of the Debtors' voluntary Petitions commencing the Chapter 11 Case.

2.28 **"Final Order"** means an order of the Bankruptcy Court or any other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed, or modified as to which order (or any modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

2.29 **"General Unsecured Claim"** means a Claim other than a Secured Claim, Administrative Expense Claim, Priority Tax Claim, or other Priority Claim.

2.30 **"Impaired"** shall have the meaning set forth in Section 1124 of the Bankruptcy Code with respect to a Claim or Interest.

2.31 **"Insider"** means the person as defined in Section 101(31) of the Bankruptcy Code.

2.32 **"Interest"** means any ownership interest in the Debtor.

2.33 **"Lien"** means a charge against or interest in property to secure payment of a debt or performance of an obligation.

2.34 **"Person"** means a person as defined in Code § 101(41).

2.35 **"Plan"** means this First Amended Joint and Consolidated Chapter 11 Plans of Reorganization and all exhibits and schedules attached hereto or referenced herein as modified from time to time.

2.36 **"Post-Petition Financing"** means the post-petition financing of Debtor's business operations by Alterna Capital Solutions approved by the Bankruptcy Court.

2.37 **"Proceeds"** means net Cash received from the sale, collection or other disposition of any of the Assets, and any interest earned thereon.

2.38 **"Schedules"** means the schedules of assets and liabilities, the list of Interests, and the statements of financial affairs filed by the Debtors in accordance with § 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Rules as such schedules and statements have been or may be supplemented or amended.

2.39 **"Secured Claim"** means a Claim that is secured by a Lien on property of the Debtor or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in such property or the amount subject to setoff as determined by the Court pursuant to § 506(a) of the Bankruptcy Code.

2.40 **"Unimpaired"** means a Claim that is not Impaired.

## ARTICLE 3.
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 **Classification of Allowed Claims and Interests.** The Allowed Claims against

and Interests in the Debtors are divided into the following Classes:

  (a) Class 1 shall consist of all allowed Administrative Claims.

  (b) Class 2 shall consist of the Allowed Secured Claim of Associated Bank, N.A.

  (c) Class 3 shall consist of the Allowed Secured Claims of Core Bank.

  (d) Class 4 shall consist of the Allowed Tax Priority Claims.

  (e) Class 5 shall consist of all Allowed General Unsecured Claims.

  (f) Class 5A shall consist of all Subordinated Allowed General Unsecured Claims.

  (g) Class 6 shall consist of all Allowed Interests.

## ARTICLE 4.
## TREATMENT OF CLAIMS AND INTERESTS

4.1 **Class 1 (Administrative Expense Claims).** Any Class 1 Claimants will receive

on the Effective Date Cash equal to the Allowed amount of such Administrative Expense

Claim in accordance with Section 1129(a)(9) of the Bankruptcy Code except to the extent that

a Class 1 Claimant has agreed to a different treatment or any order of the Bankruptcy Court

otherwise provides. Class 1 is unimpaired.

4.2 **Class 2 (Associated Bank).** Class 2 consists entirely of the Secured Claim of

Associated Bank, National Association ("Associated" and the "Associated Secured Claim").

The Associated Secured Claim is an Allowed Claim and shall be paid the net proceeds of the

liquidation of the accounts receivable and inventory existing as of the Filing Date that

comprise Associated's Collateral which, for avoidance of doubt, includes, without limitation,

any present or future related invoices, accounts receivable or proceeds therefrom, none of

which are subject to any security interest or lien in favor of Alterna Capital Solutions including, without limitation, with respect to the Post-Petition Financing, or any subsequent financing obtained by any Debtor (the "Associated Collateral"). The Associated Secured Claim and its treatment remain subject to the Order Approving Debtors' Motion for Approval of Settlement with Associated Bank, N.A. entered on March 11, 2020, which, without limitation, approved the Settlement Agreement dated as of February 26, 2020 between the Debtors and Associated (collectively, the "Associated Settlement Documents"). Associated shall retain its Liens, which are legal, valid, enforceable and non-avoidable, on the Associated Collateral and retain any and all of its rights under the Associated Settlement Documents on and after the Effective Date. Nothing in the Disclosure Statement or this Plan shall impair Associated's rights under the Associated Settlement Documents, which rights and ability are expressly preserved. For the avoidance of doubt, Associated shall retain an unsecured Allowed Claim (the "Associated Unsecured Claim") in Class 5 (General Unsecured Claims) for the unsecured balance of Associated's total Allowed Claim in these Chapter 11 Cases, which Associated Unsecured Claim is in an agreed current amount equal to at least \$5,200,000 (the "Minimum Associated Unsecured Claim Amount"); provided that the Associated Unsecured Claim will be recalculated and increase (the "Revised Associated Unsecured Claim Amount") to an amount equal to the differential between the balance of the total Allowed Claim which is at least \$6,224,292.21 as of October 28, 2020 and the liquidation proceeds paid to Associated from the sale of the Associated Collateral as of that date which is one (1) year after the Effective Date (the "Liquidation Deadline"). On the Liquidation Deadline, Associated will have the right to elect at its sole discretion to pick up some or all of the Associated Collateral that remains unliquidated after the Liquidation Deadline (the "Remaining Associated

Collateral"), to have the Debtors sell some or all of the Remaining Associated Collateral on terms agreeable to both Associated and Debtors, and/or to abandon some or all of the Remaining Associated Collateral. Debtors will make the monthly Class 5 (General Unsecured Claims) payments to Associated (i) based upon the Minimum Associated Unsecured Claim Amount until the Liquidation Deadline and (ii) based upon the Revised Associated Unsecured Claim Amount on and after the Liquidation Deadline. Class 2 is impaired.

4.3  **Class 3 (Core Bank)**. The Class 3 Claimant shall be paid on its Secured Claims as follows:

(a)  The loan balance of $745,000 on the real estate loan will be repaid over a period of 120 months commencing with the first monthly payment. The payments shall be amortized over the remaining twenty-three (23) years of the original twenty-five (25) year term of the 2018 loan with an interest rate of 3.25%. The Class 3 Claimant will receive payments in equal monthly installments commencing on the Effective Date.

(b)  The loan balance of $1,140,000 on the personal property loan will be repaid over the remaining eight (8) years of the original ten (10) year term of the 2018 loan with an interest rate of 3.25%. The eight-year term of repayment shall commence with the first monthly payment and the Class 3 Claimant will receive payments in equal monthly installments commencing on the Effective Date.

Class 3 will retain its first priority lien on the Assets which indisputably constitute its Collateral until payment in full of its Secured Claims. Class 3 will release any and all junior liens. Class 3 is impaired.

4.4  **Class 4 (Priority Tax Claims)**. Any Class 4 Claimants shall receive on account of such Claims regular installment payments in cash (i) of a total value, as of the Effective Date

- 11 -
Case 19-41545   Doc# 303   Filed 11/11/20   Page 11 of 20
Case 19-41545   Doc# 421   Filed 08/31/21   Page 21 of 33

of the Plan, equal to the allowed amount of such Claim (ii) over a period ending not later than five years after the Filing Date and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under Section 1122(b)), in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Interest will be paid on the Class 4 Claims at a rate determined by the Bankruptcy Court unless otherwise agreed to by the parties. Class 4 is unimpaired.

4.5 **Class 5 (Allowed General Unsecured Claims).** The non-insider Class 5 Claimants shall each be paid an amount equal to 15% on their Allowed Claims in equal installments over a period of 36 months commencing on the Effective Date. Class 5 is impaired.

4.6 **Class 5A (Subordinated Allowed General Unsecured Claims).** By virtue of prepetition Subordination Agreements executed by former shareholders in favor of Associated Bank, all distributions in this Class 5A are payable to Associated Bank and Associated Bank is solely entitled to vote these claims. The Class 5A Allowed Claims shall be paid $10,000 each month for a period of 12 months commencing on the first business day of the month immediately following completion of payments to Class 5. Class 5A is impaired.

4.7 **Class 6 (Interests).** The Class 6 Interests will retain their ownership interests.

## ARTICLE 5.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 **Operation of Debtors' Business.** Following confirmation of the Plan, the reorganized Debtors will retain ownership, possession and control of all Assets, and the operation of the business shall be conducted by the reorganized Debtors in the ordinary course except to the extent modified by this Plan and the Confirmation Order. All property of the Debtors and the Estates shall be vested in the reorganized Debtors free and clear of all Claims,

Liens, encumbrances or restrictions except as otherwise provided in the Plan or the Confirmation Order. The reorganized Debtors may use, sell, acquire, lease or otherwise dispose of its property in a manner not inconsistent with the Plan and the Confirmation Order, but shall otherwise be free of any restrictions imposed by the Court, the Bankruptcy Code, the Bankruptcy Rules, or the Office of the United States Trustee. The Chief Executive Officer of Debtors will continue to direct the reorganized Debtors' business operations following confirmation of the Plan.

5.2    **Funding of the Plan.** The one-year term of the Post-Petition Financing expires on or about December 23, 2020. Pursuant to the Plan and Debtors' agreement with Alterna Capital Solutions, the funding terms of the Post-Petition Financing will be maintained through Confirmation as provided in the Limited Extension of Financing Terms of Invoice Purchase and Security Agreement and DIP Financing. In order to carry out the terms of the Plan following Confirmation, the reorganized Debtors may secure funds from the following sources in addition to the income arising from ordinary course business operations:

(a)    Financing. The reorganized Debtors will actively pursue post-Confirmation financing on favorable terms to reduce the interest carry associated with the Post-Petition Financing.

(b)    Causes of Action. The reorganized Debtors may prosecute Causes of Action as deemed necessary and appropriate for the benefit of Creditors and the reorganized Debtor.

(c)    Loans. The reorganized Debtors may borrow funds from time to time as may be necessary for business operations or payments under the Plan.

5.3 **Prosecution of Litigation.**

(a) On and after the Effective Date, the reorganized Debtors will, pursuant Section 1123(b)(3)(B) of the Bankruptcy Code, retain and become the holder of, and have the exclusive right to enforce any and all present or future Causes of Action and litigation claims and defenses of the Estate (including, but not limited to, objections to Claims) and any and all rights of Debtors and/or the Estates that arose before or after the Filing Date. On or after the Effective Date, the reorganized Debtors may pursue, abandon, settle or release any or all such Causes of Action and litigation claims as they deem appropriate in the exercise of good business judgment, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

(b) The allowance of any Claim prior to the Effective Date shall not constitute a waiver of any Cause of Action against the holder of such Claim.

5.4 **Exemption from Certain Transfer Taxes.** Pursuant to § 1146(c) of the Bankruptcy Code, any transfers from Debtors or the Estates to any third party shall not be subject to any document recording tax, stamp tax, conveyance fee, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to desist from any collection action of any such tax or governmental assessment and to accept for filing and recordation any instruments or other documents relating to any such transfers without the payment of any such tax or governmental assessment.

## ARTICLE 6.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    **Assumption of Executory Contracts and Unexpired Leases.** On the Effective

Date, the following executory contracts and unexpired leases shall be deemed to be assumed as

of the Confirmation Date:

    (a)    Trademark License Agreement with Ford Motor Company;

    (b)    License Agreement with General Motors, LLC;

    (c)    License Agreement with Jordan Outdoor Enterprises, Ltd.;

    (d)    License Agreement with Haas Outdoors, Inc.;

    (e)    Real Estate Lease with Sheepfold Family Limited Partnership (California
office); and

    (f)    Commercial Lease by and between Fencepost Productions, Inc. and Old
Dominion Apparel Corporation (Missouri central office and warehouse).

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the

Bankruptcy Code, of the assumption of the foregoing executory contracts and unexpired leases

pursuant to the Plan.

6.2    **Rejection of Executory Contracts and Unexpired Leases.** On the Effective

Date, all executory contracts and unexpired leases that exist between Debtors and any Entity

shall be deemed rejected as of the Confirmation Date, except for any executory contract or

unexpired lease (a) which has been assumed or rejected pursuant to an order of the Bankruptcy

Court entered prior to the Confirmation Date or pursuant to the Confirmation Order, or (b) as

to which a motion for approval of the assumption of such executory contract or unexpired lease

has been filed and served prior to the Confirmation Date (except to the extent that any such

motion is ultimately denied or withdrawn). Entry of the Confirmation Order shall constitute

the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases pursuant to the Plan.

## ARTICLE 7.
## MODIFICATION OF PLAN

7.1 **Amendments Prior to Confirmation Date.** Modifications or amendments to the Plan may be proposed in writing by Debtor at any time before the Confirmation Date, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code.

7.2 **Amendments After Confirmation.** The Plan may be modified by Debtors at any time after the Confirmation Date and before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code and the Court, after notice and hearing, confirms the Plan, as modified

7.3 **Effect on Claims.** A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE 8.
## RETENTION OF JURISDICTION

8.1 **Jurisdiction of the Bankruptcy Court.** Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim including the resolution of any

request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b) Hear and determine any claims for compensation and reimbursement of expenses provided, however, that from and after the Effective Date, the payment of the fees and expenses of professionals and third-party service providers engaged by Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(c) Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which Debtor(s) are a party or with respect to which Debtor(s) may be liable, including, if necessary, the nature, amount, or allowance of any Claims arising therefrom;

(d) Hear and determine all issues concerning performance of and payments under the provisions of the Plan;

(e) Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

(f) Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g) Hear and determine all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including

disputes arising under agreements, documents or instruments executed in connection with the Plan;

(h) Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j) Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k) Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(l) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(m) Except as otherwise limited herein, recover all assets of Debtors and property of the Estates, wherever located;

(n) Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o) Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(p)    Enter a final decree closing the Chapter 11 Case.

## ARTICLE 9.
## MISCELLANEOUS PROVISIONS

9.1    **Payment of Statutory Fees.** All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on or before the Effective Date except to the extent that any such fees are subject to dispute. In that event, any fees allowed by Final Order shall be paid within 30 days thereafter.

9.2    **Severability of Plan Provisions.** If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration and interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.3    **Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

9.4    **Notices.** Any notice, request, or demand required or permitted to be made or provided to or upon Debtors under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class

mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Fencepost Productions, Inc.
> NPB Company, Inc.
> Old Dominion Apparel Corporation
> 900 S. Vista Avenue
> Independence, Missouri 64056
> Attention: Matt Gray

With a copy to:

> Jonathan A. Margolies, Esq.
> McDowell Rice Smith & Buchanan
> 605 W. 47th Street, Suite 350
> Kansas City, MO 64112
> jmargolies@mcdowellrice.com

### FENCEPOST PRODUCTIONS, INC.

By: /s/ Matt Gray
President & CEO

### NPB COMPANY, INC.

By: /s/Matt Gray
President & CEO

### OLD DOMINION APPAREL CORPORATION

By: /s/Matt Gray
President & CEO

## Jonathan Margolies

| | |
|---|---|
| **From:** | cmecf@ksb.uscourts.gov |
| **Sent:** | Wednesday, November 11, 2020 5:18 PM |
| **To:** | Courtmail@ksb.uscourts.gov |
| **Subject:** | 19-41545 Amended Chapter 11 Plan Ch 11 Fencepost Productions, Inc. and NPB Company, Inc. |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

### U.S. Bankruptcy Court

### District of Kansas

Notice of Electronic Filing

The following transaction was received from Jonathan A. Margolies entered on 11/11/2020 at 5:17 PM CST and filed on 11/11/2020

**Case Name:** Fencepost Productions, Inc. and NPB Company, Inc.

**Case Number:** 19-41545

**Document Number:** 303

### Docket Text:

Amended Chapter 11 Plan of Reorganization Filed by Debtors Fencepost Productions, Inc., NPB Company, Inc., Old Dominion Apparel Corporation (RE: related document(s)[277] Chapter 11 Plan). (Margolies, Jonathan)

The following document(s) are associated with this transaction:

**Document description:** Main Document

**Original filename:** Fencepost Productions, Inc. First Amended Joint and Consolidated Chapter 11 Plans of Reorganzation.pdf

### Electronic document Stamp:

[STAMP bkecfStamp_ID=1032355009 [Date=11/11/2020] [FileNumber=28468477
-0] [3a9f95dc0c92a4c8e9f6d2ce3557b4825afe2ad207e7968492621ed9db6d52079
4a7e72c9cb37b81f9bb92c2faf48a01228bf336b881793ef5070261bf434d35]]

### 19-41545 Notice will be electronically mailed to:

Christopher T. Borniger on behalf of U.S. Trustee U.S. Trustee
christopher.t.borniger@usdoj.gov, ustpregion20.wi.ecf@usdoj.gov

1

Edmond M Burke on behalf of Creditor Core Bank
eburke@chuhak.com

John J. Cruciani on behalf of Creditor Associated Bank, N.A.
john.cruciani@huschblackwell.com, susan.williams@huschblackwell.com;susan-williams-
6839@ecf.pacerpro.com

Charles A DeVore on behalf of Creditor Associated Bank, N.A.
charles.devore@katten.com

Michael D. Fielding on behalf of Creditor Associated Bank, N.A.
michael.fielding@huschblackwell.com, susan.williams@huschblackwell.com;michael-fielding-
0183@ecf.pacerpro.com;susan-williams-6839@ecf.pacerpro.com

Colin N. Gotham on behalf of Creditor MidCap Trade Finance LLC d/b/a Brookridge Funding
Cgotham@emlawkc.com, martha@emlawkc.com;jeff@evans-mullinix.com

Scott M. Hill on behalf of Creditor Alterna Capital Solutions LLC
hill@hitefanning.com, tremblay@hitefanning.com

Richard A Kear on behalf of U.S. Trustee U.S. Trustee
richard.kear@usdoj.gov

Michael D Leifman on behalf of Creditor Core Bank
mleifman@chuhak.com

Jonathan A. Margolies on behalf of Debtor Fencepost Productions, Inc.
jmargolies@mcdowellrice.com, ksims@mcdowellrice.com

Jonathan A. Margolies on behalf of Debtor NPB Company, Inc.
jmargolies@mcdowellrice.com, ksims@mcdowellrice.com

Jonathan A. Margolies on behalf of Debtor Old Dominion Apparel Corporation
jmargolies@mcdowellrice.com, ksims@mcdowellrice.com

Paul T Musser on behalf of Creditor Associated Bank, N.A.
paul.musser@katten.com

Kristie R Orme on behalf of Debtor Fencepost Productions, Inc.
korme@mcdowellrice.com

Kristie R Orme on behalf of Debtor NPB Company, Inc.
korme@mcdowellrice.com

Kristie R Orme on behalf of Debtor Old Dominion Apparel Corporation
korme@mcdowellrice.com

Patricia A. Reeder on behalf of Creditor BMS Management, Inc.
reeder@wrglaw.com, brandi@wonerglenn.com

Peter L Riggs on behalf of Creditor Newbridge Global Sourcing, LLC

priggs@spencerfane.com, ccarpenter@spencerfane.com

John P Sieger on behalf of Creditor Associated Bank, N.A.
john.sieger@kattenlaw.com

Paul D Sinclair on behalf of Creditor Doug Marchisello, as trustee of the Douglas A. Marchisello Trust Dated
August 7, 1991
psinclair@sandbergphoenix.com, dclements@sandbergphoenix.com

Paul D Sinclair on behalf of Creditor Doug Marchisello, individually
psinclair@sandbergphoenix.com, dclements@sandbergphoenix.com

Paul D Sinclair on behalf of Creditor Douglas A Marchisello
psinclair@sandbergphoenix.com, dclements@sandbergphoenix.com

Lee M Smithyman on behalf of Creditor Smithyman & Zakoura, Chartered
lee@smizak-law.com, sherree@smizak-law.com

Sharon L. Stolte on behalf of Creditor Doug Marchisello, as trustee of the Douglas A. Marchisello Trust Dated
August 7, 1991
sstolte@sandbergphoenix.com

Sharon L. Stolte on behalf of Creditor Doug Marchisello, individually
sstolte@sandbergphoenix.com

Sharon L. Stolte on behalf of Creditor Douglas A Marchisello
sstolte@sandbergphoenix.com

Bruce E. Strauss on behalf of Creditor Core Bank
bruces@merrickbakerstrauss.com

U.S. Trustee
ustpregion20.wi.ecf@usdoj.gov

Richard B Webber, II on behalf of Creditor Alterna Capital Solutions LLC
rwebber@zkslawfirm.com, service@zkslawfirm.com;rschohl@zkslawfirm.com

Bruce J. Woner on behalf of Creditor BMS Management, Inc.
bwoner@wonerglenn.com, nikki@wonerglenn.com;jeannie@wonerglenn.com

Nicholas J Zluticky on behalf of Creditor Fresh River, Inc.
nicholas.zluticky@stinsonleonard.com, ecfservice@bmcgroup.com

### 19-41545 Notice will not be electronically mailed to:

Douglas S Skalka on behalf of Creditor MidCap Trade Finance LLC d/b/a Brookridge Funding
Neubert Pepe & Monteith PC
195 Church Street 13th Floor
New Haven, CT 06510